**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CATHERINE FROMSON | ) Case No. C 13-1294 SC |
|  | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANT'S |
|  | ) MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
|  | ) |
| GEORGIA-PACIFIC CONSUMER | ) |
| PRODUCTS LP, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |
|  | ) |

## I.   **INTRODUCTION**

Now before the Court is Defendant Georgia-Pacific Consumer Products LP's ("Georgia-Pacific") motion for summary judgment against Plaintiff Catherine Fromson.  ECF No. 22 ("MSJ").  The motion is fully briefed, ECF Nos. 24 ("Opp'n"), 25 ("Reply"), and suitable for decision without oral argument, Civ. L.R. 7-1(b).  As explained below, the motion is GRANTED.

///

///

///

///

1  II.   **BACKGROUND**

2      A.   **Procedural Background**

3       The parties have undertaken no motion practice up to this

4  point.  Plaintiff originally filed her action in Contra Costa

5  County Superior Court against Georgia-Pacific and one of its

6  employees, Rick Rising.  Both Defendants removed on March 22, 2013.

7  On June 28, 2013, the parties stipulated to allow Plaintiff to file

8  her first amended complaint.  ECF Nos. 13 ("Stip."), 14 ("FAC").

9  Defendants answered the FAC on August 5, 2013, and the parties

10  proceeded with discovery.  Discovery closed on January 3, 2014, the

11  same day Defendants moved for summary judgment.  On January 10,

12  2014, Plaintiff dismissed her claims against Mr. Rising with

13  prejudice.  ECF No. 23.  The Court now rules on Defendant's motion

14  for summary judgment as to Georgia-Pacific alone, since Mr. Rising

15  has been dismissed.[1]

16      B.   **Factual Background**

17      i.    **Plaintiff's Employment with Defendant**

18       This is an employment discrimination case.  Plaintiff is a 51-

19  year-old woman.  ECF No. 25-1 ("Pangborn Decl. II") Ex. G

20  ("Stallings Decl. II").  She began working at Defendant's

21  predecessor, James River, in 1986, and in or around 2001, Defendant

22  acquired James River -- by that time called "Fort James" -- and

23  promoted Plaintiff to the position of Customer Sales Manager

24  ("CSM").  ECF No. 24-2 ("Fromson Decl.") Ex. F ("Pl. Depo.") 22:6-

25  12, 24:25-25:20.[2]  Throughout her ten-year tenure at Defendant, she

26  ───────────────────

27  [1] Throughout the rest of this Order, the Court refers to Georgia-
Pacific as "Defendant."

28  [2] Both Plaintiff and Defendant introduce Plaintiff's Deposition.
The Court cites to it specifically, instead of referring to the

**United States District Court**
For the Northern District of California

1   worked at Defendant's San Ramon, California office.  Pl. Depo.
2   32:25-33:3.  As CSM, Plaintiff worked solely with the grocery store
3   Safeway, a major customer of Defendant, handling sales of
4   Defendant's tabletop and napkin products.  Id. 25:13-25, 34:16-22.
5   Defendant compensated Plaintiff with a base salary and a sales
6   incentive pay ("SIP") bonus, paid twice yearly at managers'
7   discretion, based on the performance of both teams and individual
8   CSMs.  Id. 47:21-48:11.

9        According to the "Roles, Responsibilities & Expectations"
10  ("RR&E") document she created each year and reviewed with her
11  manager, one of Plaintiff's main responsibilities was to "Drive
12  Profitable Growth and Strengthen Customer/Market Position."  Id.
13  38:3-39:3, 47:9-20 & Exs. 10, 11 ("RR&E's").  As part of this
14  responsibility, Plaintiff was expected to implement strategies to
15  grow revenue, year-over-year gross profit margin, and market share
16  of Defendant's Dixie and Vanity Fair brands.  Id. & Exs. 10, 11.
17  Plaintiff's performance was measured by her ability to meet or
18  exceed net revenue year-over-year growth objectives, and to
19  maintain and grow dollar share across Dixie and Vanity Fair
20  products.  Id. 39:10-40:1 & Exs. 10, 11.  Her performance was also
21  evaluated according to her ability to budget Defendant's
22  advertising, coupon, and promotional dollars -- "trade dollars" --
23  to increase product sales to Safeway, thereby selling more products
24  and affording Safeway more ads, coupons, and promotions from
25  Defendant.  Id. 40:19-22, 42:18-22, 56:20-57:3.  Plaintiff was also
26  expected to forecast sales for production planning and trade dollar
27  purposes.  Id. 42:23-43:7.

28  _____
    different portions the two parties filed.

3

**United States District Court**
For the Northern District of California

1    Two of Plaintiff's supervisors are important to this case:

2    Division Vice President of Sales Rick Rising, and Brandon McDonald,

3    who in December 2009 became the Sales Director for the Safeway

4    Sales Team (Plaintiff's team) and Plaintiff's direct supervisor.

5    Id. 53:16-19; ECF No. 22-1 ("Pangborn Decl. I") Ex. C ("Rising

6    Decl.") ¶ 7.  In August 2010, Plaintiff told Mr. McDonald that she

7    believed she was not being compensated at a competitive level.  Pl.

8    Depo. 57:20-58:6.  Around that time, Defendant hired another

9    employee, Alana Ornellas, whom Plaintiff attests was being

10   compensated "more at market" than she was, partly due to her having

11   been hired more recently.  Id.  After Plaintiff spoke with Mr.

12   McDonald about this, Mr. McDonald approached Mr. Rising to ask for

13   a salary increase for Plaintiff, whom he described as a key part of

14   Defendant's Safeway team.  Rising Decl. ¶ 7.  Mr. Rising in turn

15   asked his supervisor, and ultimately, Plaintiff had two salary

16   increases approved: one for 9 percent and the other for 10 percent,

17   for a total salary increase of 19 percent.  Id.; Pl. Depo. 58:7-19.

18       **ii.   Plaintiff's Performance**

19    Sales of Defendant's tabletop products to Safeway began to

20   decrease in 2009.  Pl. Depo. 53:22-54:8.  Defendant's sales to

21   Safeway had been above the industry average for some time, id.

22   83:3-16, though according to Plaintiff, in 2009-2010, Safeway's

23   private-label brand began to cut into Defendant's sales, and a poor

24   economy affected Defendant's sales as well, id. 54:5-8, 55:23-56:8.

25   As Plaintiff stated, even with a decline in sales, Defendant

26   remained over-shared in the Safeway market, though she believed

27   that there was little she could do, personally, to improve

28   Defendant's sales.  Id. 83:3-16, 109:17-19, 110:5-7.  She believes

United States District Court
For the Northern District of California

that during this time, her entire sales group was mismanaged by Mr. McDonald, overburdened with work, and short-handed.  Id. 43:18-44:11, 94:1-8, 104:3-8.

The performance reviews Plaintiff supplies in this case indicate that between 2008 and 2012, she was a hard-working, creative, collaborative, experienced, often passionate employee who had an excellent relationship with Safeway.  See generally ECF No. 24-2 ("Pl. Decl.") Ex. A at B-0008-09, ("2008 Review"), B-0010-12 ("2009 Review"), B-0016-17 ("2010 Review"); Pl. Decl. Ex. B ("2011 Review") (collectively, "Reviews").[3]  Generally, Plaintiff's reviews also indicate that throughout the years, Plaintiff had difficulty with forecasting and analytics, especially after the rollout of a new tool, "iPlan"; and also, to some degree, with being proactive and meeting deadlines.  Id.  Plaintiff's 2010 Review also indicated that "her frustrations have had an impact on the team's morale . . . ."  The Reviews show a decrease in Plaintiff's overall performance review ratings between 2008 and 2011.  Each of Plaintiff's Reviews has a range of three boxes: "Below Expectations," "Meeting Expectations," and "Exceeding Expectations."  Each of these boxes, in turn, is divided into three sub-boxes.  Plaintiff's overall performance review rating moved from the low end of "Exceeding Expectations" in December 2008, to the middle of "Meeting Expectations" in January 2010, to the low end of "Meeting Expectations" in December 2010, to the high end of

---

[3] The 2011 Review was formulated in December 2011, corrected per Plaintiff's comments and challenges, and then reissued in 2012.  See Pl. Depo. 160:3-21.  Plaintiff's corrections did not concern discrimination.  Id.  The revised version indicates several declines in volume, revenue, and gross margin in Safeway stores as to the Dixie plate and Vanity Fair napkins products.  2011 Review at 1-2.

**United States District Court**
For the Northern District of California

1   "Below Expectations" in January 2012.  Id.

2       **iii.**     **The Beginning of Plaintiff's Workplace Problems**

3       Plaintiff's workplace issues relevant to this case began in

4   2010, with two major events triggered by Plaintiff's behavior in

5   the office.  In October 2010, after being asked to participate in

6   an ad hoc phone meeting, Plaintiff refused and left the building.

7   Id. 67:20-69:21.  She explained that she was "very frustrated with

8   the direction the team was going and the support and leadership we

9   were getting," but noted that she was "not proud of" her reaction

10  to the request to participate in the meeting.  Id. 69:15-21.  Also,

11  Plaintiff was frustrated with the use of a new planning tool,

12  "iPlan," and she frequently shared these frustrations with her

13  team.  Id. 61:13-21, 63:12-20, 64:2-16.

14      On Friday, June 17, 2011, a Safeway Director sent an email

15  requesting Plaintiff's team's recommendations for Thanksgiving and

16  Christmas sales and promotions.  Pl. Depo. 79:14-19; Pangborn Decl.

17  I Ex. 21 ("Safeway Email").  Mr. McDonald asked Plaintiff about her

18  strategy on this matter, and Plaintiff told him that she would be

19  out of the office on vacation until June 22, requesting that he

20  take the lead on the project in her absence.  Safeway Email at 1.

21  He responded with disappointment, telling Plaintiff that he wanted

22  her to "own tabletop."  Id.  Plaintiff believed that Mr. McDonald

23  should have been willing to pick up some of his team's work, as

24  they did for each other.  Pl. Depo. 80:17-25, 81:1-20.  On June 23,

25  2011, after Plaintiff returned to her office, she and Mr. McDonald

26  had a "heated discussion."  Id. 89:13-17.  Plaintiff was planning

27  to go out of town again, but new responsibilities had arisen, and

28  the team was short-handed, leaving Plaintiff without the time or

**United States District Court**
For the Northern District of California

capacity to complete the work.  <u>Id.</u> 90:18-25, 91:1-6, 91:16-22.
Plaintiff's discussion with Mr. McDonald became a discussion about
her performance and her opinion of his work.  <u>See id.</u> 97:13-25,
98:1-8.  Plaintiff ended the conversation but stayed in the office
to work.  <u>Id.</u> 95:10-25, 96:1-25, 97:1-6.

After this, Mr. McDonald discussed Plaintiff's performance
issues and attitude with Mr. Rising and Defendant's Human Resources
Director, Ann Stallings.  Rising Decl. ¶ 9.  This discussion
resulted in an agreement to send Plaintiff a written warning, which
would include a message that Plaintiff would not receive a SIP
bonus because, as Mr. Rising stated, "we wanted to impress on Ms.
Fromson that her performance was unacceptable and had to improve;
we also believed that paying the SIP bonus would send the wrong
message about the severity of her performance issues."  <u>Id.</u>

That warning, Pangborn Decl. I Ex. 22, dated July 6, 2011,
comports with this description of the discussion, indicating that
Mr. McDonald had in November and December 2010 identified several
"improvement areas" for Plaintiff: "Respect and Humility," "Work
Style / Response Time," "Customer Wiring," "Forecast Accuracy," and
"Financial / Analytical Thinking."  The warning states that
Plaintiff's performance in those areas had been unacceptable, and
that her "refusals to participate in team meetings, complaining
about a lack of resources and [conduct on June 23, 2011] are
representative of a work attitude that is a distraction to the team
and is inconsistent with our Guiding Principles."  <u>Id.</u>  The warning
stated that Plaintiff had not attended to "repairing the issues
that are contributing to the business decline," that she had not
been engaged with her team, and that she had lacked commitment to

**United States District Court**
For the Northern District of California

follow through with training and to meet deadlines.  Id.  It
concluded with a statement that Plaintiff's performance did not
merit a SIP bonus, and that future incidents of disruptive and
disrespectful behavior would result in Plaintiff's "immediate
termination."  Id.

Around July 6, 2011, when the warning issued, Mr. McDonald
told Plaintiff that he had formally contacted HR to "regarding
perceived performance issues" on Plaintiff's part.  Id. 115:13-25,
116:1-10.  In that discussion, Mr. McDonald read through the
warning with Plaintiff, and Plaintiff told him that she would
refute the letter.  Id. 116:1-10.  She received a copy of the
letter that evening, id., after which she emailed Ms. Stallings --
Defendant's HR Director -- to state that the warning letter, which
she had not yet seen, was inaccurate.  Pangborn Decl. I Ex. 25
("July 6 Stallings Email").  She asked to meet with someone in HR
to discuss the matter, stating that she was "baffled by the
accusations" given her twenty-five-year tenure.  Id.  The July 6
Stallings Email does not include any accusation of discrimination.
Id.  Ms. Stallings responded to Plaintiff that Mr. McDonald had
contacted her to discuss performance concerns and his intention to
share the warning with Plaintiff.  Id.

     **iv.**    **Defendant's Alleged Discrimination**

Plaintiff talked with Ms. Stallings and sent a follow-up email
on July 8, 2011.  Pangborn Decl. I Ex. 25 ("July 8 Stallings
Email").  In it, she defended her positive work history, noted her
salary increase, and stated that she is "unclear as to why" she
received performance criticisms.  Id.  Accusations of
discrimination arose for the first time in this record when

**United States District Court**
For the Northern District of California

Plaintiff wrote in the July 8 Stallings Email, "Since my 25 year history is very good, I must believe the reason must either be related to my gender or age.  If that is true, it concerns me greatly."  Id.  She also stated that her designation as a home-based employee, which allowed her to work from home several days a week, had been revoked, which she believed was due to her supervisor's attempt to make the employment environment so difficult that she would quit.  Id.  She made the same allegation as to the reasons behind her being refused a SIP bonus.  Id. Finally, she stated that her supervisor had begun to send her emails setting forth "unrealistic and unachievable" timelines, allegedly to create a hostile work environment or to "paper" a file to support her termination.  Id.  Plaintiff concluded her July 8 email by asking Ms. Stallings what workplace process applies when a supervisor is "illegally discriminating against an employee or otherwise violating laws that apply to the workplace."  Id.

Plaintiff also sent Ms. Stallings a chain of emails as proof of mistreatment to support her complaint against Mr. McDonald.  Pl. Depo. 121:6-9; Pangborn Decl. I Ex. 26 ("Planning Prep. Email"). In those emails, Mr. McDonald had emailed Plaintiff and Ms. Ornellas about miscellaneous planning preparations, to which Plaintiff responded that she needed help prioritizing the 17.75 hours remaining in her week.  Id.  She also provided a list of things that needed to be done, seeking to indicate to Mr. McDonald that there were not enough hours in the week to complete the list. Pl. Depo. 121:18-25, 122:1-13.  Mr. McDonald responded to Plaintiff that he wanted her to schedule time with him to discuss specifics, though in the alternative they could discuss them at a scheduled

**United States District Court**
For the Northern District of California

1   meeting.   Planning Prep. Email.   He requested that she finish one

2   item, "playbook summaries," before the scheduled meeting, and noted

3   that other planning listed in an earlier email remained critical.

4   Id.   Plaintiff said that she never had the meeting on priorities

5   with Mr. McDonald, and that many emails from him stopped after her

6   comment to Ms. Stallings that she believed he had been "papering

7   the file" in advance of her termination.   Pl. Depo. 123:17-21.

8        Plaintiff stated during her deposition that she did not

9   believe that Mr. McDonald was harassing her or discriminating

10  against her because of her sex or age until she received the

11  warning.   Pl. Depo. 84:2-6.   She said that because she believed

12  that the warning's criticisms were not factual, the warning could

13  not have been based on her performance, so according to Plaintiff,

14  "It had to have been based because I'm older and I am a woman."

15  Id. 83:17-84:6.

16       In response to Plaintiff's July 8 email, Ms. Stallings and Mr.

17  Rising traveled to San Ramon to investigate Plaintiff's complaints.

18  Pangborn Decl. I Ex. D ("Stallings Decl.") ¶ 7.   After interviewing

19  Plaintiff, her co-workers on the Safeway team, and Mr. McDonald,

20  Mr. Rising and Ms. Stallings concluded that no discrimination had

21  occurred.   Id.; Pl. Depo. 137:13-25.

22       However, Ms. Stallings did tell Plaintiff that the

23  investigation "had revealed or shown some management opportunities

24  for Mr. McDonald," meaning essentially that he was an inexperienced

25  manager who needed guidance in motivating his subordinates.   Pl.

26  Depo. 137:22-25; Stallings Decl. ¶ 7.   This resulted in Mr. Rising

27  assuming a mentoring role for Mr. McDonald and taking a direct role

28  in supervising Plaintiff.   Pl. Depo. 138:4-9; Stallings Decl. ¶ 7.

**United States District Court**
For the Northern District of California

1    Mr. McDonald still served as manager, though his correspondence

2    with Plaintiff slowed.   Id.

3        Ms. Stallings indicated that the opportunity to earn an SIP

4    would still be available to Plaintiff, despite the warning's

5    statement otherwise, and she also said that the warning would be

6    rescinded.  Pl. Depo 138:20- 139:1-10.  Even so, Plaintiff stated

7    that she was ambivalent about the investigation's results, because

8    though she thought it important that Mr. McDonald was on a

9    developmental plan, she did not like the fact that, in her opinion,

10   the warning had been "brushed aside."  Id. 139:15-22.  Ms.

11   Stallings stated that the warning was removed from Plaintiff's

12   personnel file because HR had decided "that the extent to which

13   [Plaintiff] had been fully warned about her performance issues

14   before the warning was unclear."  Stallings Decl. ¶ 7.  Ultimately,

15   one member of the Safeway team -- Nancy Nelson, a 57-year-old woman

16   -- did receive a SIP bonus for the first half of 2011, "based on

17   her work on deduction management and reconciliation."  Id. ¶ 8.  No

18   one else on the team received a SIP bonus.  Id.

19       After the investigation, Mr. Rising began to communicate with

20   Plaintiff more frequently, emailing her daily or weekly when he had

21   previously contacted her quite rarely.  Pl. Depo. 138:4-9, 177:19-

22   178:5.  Plaintiff does not contend that the content of these emails

23   was discriminatory or threatening, though she stated that she did

24   not like the increased focus and attention related to her business.

25   Id. 178:6-179:-9.  A review of emails between Mr. Rising and the

26   Safeway team, including Plaintiff, shows one email that encourages

27   Plaintiff and the Safeway team to continue being creative and

28   executing plans for growth.  Pangborn Decl. I Ex. 40 ("Sept. 19

1  Email").  He also emailed Plaintiff to ask her not to conduct an

2  important presentation over the telephone.  <u>Id.</u> Ex. 41 ("Sept. 21

3  Email").  Throughout this time, Safeway shares continued to

4  decline.  Pl. Depo. 157:1-21

5      Separately from these emails and Mr. Rising's heightened

6  involvement with the Safeway team, Plaintiff maintains that even

7  before she had received the warning from Mr. McDonald, Mr. Rising

8  had harassed her or discriminated against her due to her sex and

9  age.  Pl. Depo. 84:7-10.  She did not say so in her complaints to

10  HR about the June warning.  <u>Id.</u> 118:10-15.  Nevertheless, Plaintiff

11  provided several examples of what she alleges to have been

12  discriminatory or harassing behavior by Rising.  <u>Id.</u> 84:7-11.

13      First, she said that when she, Mr. Rising, and several other

14  employees were waiting for rides to the airport in Orlando,

15  Florida, Mr. Rising and another male employee took a taxi while

16  Plaintiff had to wait for a shuttle.  <u>Id.</u> 84:11-85:11.  Second, she

17  observed that even before Mr. McDonald was her manager, she had

18  discussed with her then-manager Pete Thomsen that Mr. Rising never

19  seemed to talk to her at meetings or other work events.  <u>Id.</u> 85:12-

20  86:11.  Finally, Plaintiff recalled a meeting that occurred during

21  the Orlando trip mentioned above.  <u>Id.</u> 86:12-24.  At the meeting,

22  the only empty seat was next to Plaintiff, though another employee

23  had recently left his seat to do something else, leaving his

24  belongings on or near the seat.  <u>Id.</u>  When Mr. Rising arrived at

25  the meeting, rather than taking the empty seat next to Plaintiff,

26  he moved the other employee's things and sat down in that seat.

27  <u>Id.</u>

28  ///

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**v.   <u>Plaintiff's Termination</u>**

In early April 2012, Ms. Ornellas resigned.  Rising Decl. ¶ 17.  She had been the Senior CSM for Safeway's tissue and towel categories, with Plaintiff owning the napkin and tabletop categories.  <u>Id.</u>  At this point, Defendant determined that the decreased revenue generated by Safeway did not warrant having two CSM positions for those Safeway products, which Plaintiff agrees made sense as a business decision.  <u>Id.</u>; <u>see also</u> Pl. Depo. 170:11-19, 179:25-180:10.  Plaintiff learned from Mr. Rising on April 23, 2012, that Defendant planned to merge the two CSM positions, eliminating her position.  Pl. Depo. 169:22-170:8.  Plaintiff understood at that time that Defendant was satisfied with her performance (though not with the business).  <u>Id.</u> 172:1-25.  She said, in distinguishing her performance from the business itself, "[Y]ou can do as much as you can, but you can't necessarily change it."  <u>Id.</u> 172:21-25.

Plaintiff does not contend that the decision to eliminate her position was discriminatory, though she stated that she believes that by putting in a younger male that Defendant had "already essentially hired on the side" was discriminatory.  <u>Id.</u> 170:13-19.  She knew that Defendant had planned to hire a "very high-level business analyst," though she had not been told that she could apply for the position.  <u>Id.</u> 179:14-24.  When Mr. Rising told her that the positions would be merged, Plaintiff asked Mr. Rising to clarify whether he was saying that he would be hiring someone "outside this room" -- i.e., whether it had already been determined that Plaintiff would not be considered for the new, consolidated position.  <u>Id.</u> 180:4-10.  Mr. Rising said yes.  <u>Id.</u>  Plaintiff

13

1  elected to work a few more days from home before her termination.

2  Id. 180:14-18.  Defendant filled the newly merged position with an

3  internal candidate, Chris Johnson.  Rising Decl. ¶ 17.

4      Plaintiff asserts six causes of action against Defendant: (1)

5  retaliation under California's Fair Employment and Housing Act

6  ("FEHA"), Cal. Gov. Code § 12940, et seq.; (2) gender

7  discrimination, id.; (3) age discrimination, id.; (4) wrongful

8  termination in violation of public policy; (5) hostile work

9  environment, id.; and (6) punitive damages.  ECF No. 14 ("FAC").

10  Based on the above facts, which are undisputed, Defendant now moves

11  for summary judgment.  Plaintiff opposes the motion.

12

13  **III.  <u>LEGAL STANDARD</u>**

14      Entry of summary judgment is proper "if the movant shows that

15  there is no genuine dispute as to any material fact and the movant

16  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

17  56(a).  Summary judgment should be granted if the evidence would

18  require a directed verdict for the moving party.  <u>Anderson v.</u>

19  <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).  The moving party

20  bears the initial burdens of production and persuasion.  <u>Nissan</u>

21  <u>Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d

22  1099, 1102 (9th Cir. 2000).

23      "In order to carry its burden of production, the moving party

24  must either produce evidence negating an essential element of the

25  nonmoving party's claim or defense or show that the nonmoving party

26  does not have enough evidence of an essential element to carry its

27  ultimate burden of persuasion at trial."  <u>Id.</u>  "In order to carry

28  its ultimate burden of persuasion on the motion, the moving party

14

United States District Court
For the Northern District of California

must persuade the court that there is no genuine issue of material fact." Id.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Anderson, 477 U.S. at 248-49.

**IV.  DISCUSSION**

   **A.  Discrimination**

   Plaintiff asserts causes of action against Defendant for gender and age discrimination under California Government Code section 12940.  FAC ¶¶ 44-54.  Both claims are premised on her allegations that Defendant singled her out for harsher treatment, withheld her SIP bonuses, issued negative performance reviews without legitimate purposes, and ultimately terminated her employment under false pretenses.  Id. ¶¶ 45, 50.  Defendant moves for summary judgment of both of Plaintiff's discrimination claims. MSJ at 14-18.  Defendant argues that Plaintiff cannot state a prima facie claim for discrimination based on her failure to receive a SIP bonus in July 2011, and that it is questionable that she could state a prima facie claim based on her negative performance reviews and termination.  Id.  Defendant also argues that even if Plaintiff could state a prima facie claim for discrimination, Defendant has stated legitimate, nondiscriminatory reasons for not issuing a SIP bonus, giving her poor reviews, and terminating her employment. Id.

   "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent

15

**United States District Court**
For the Northern District of California

federal precedent when applying [their] own statutes." <u>Guz v.</u>
<u>Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 354 (Cal. 2000).  In
particular, California has adopted the three-stage burden-shifting
test established by the United States Supreme Court, the <u>McDonnell</u>
<u>Douglas</u> test, for trying claims of discrimination based on a theory
of disparate treatment.  <u>Id.</u>  "'Disparate treatment' is intentional
discrimination against one or more persons on prohibited grounds."
<u>Guz</u>, 24 Cal. 4th at 354 n.20.  The "<u>McDonnell Douglas</u> test reflects
the principle that direct evidence of intentional discrimination is
rare, and that such claims must usually be proved
circumstantially."  <u>Id.</u> at 354.

Under the <u>McDonnell Douglas</u> test, a plaintiff alleging
disparate treatment must first establish a prima facie case of
discrimination.  <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1123
(9th Cir. 2000).  "The burden of production, but not persuasion,
then shifts to the employer to articulate some legitimate,
nondiscriminatory reason for the challenged action.  If the
employer does so, the plaintiff must show that the articulated
reason is pretextual 'either directly by persuading the court that
a discriminatory reason more likely motivated the employer or
indirectly by showing that the employer's proffered explanation is
unworthy of credence.'"  <u>Id.</u> at 1123–24 (quoting <u>Texas Dep't of</u>
<u>Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).

When a plaintiff presents direct evidence that the proffered
explanation is a pretext for discrimination, "very little evidence"
is required to avoid summary judgment. EEOC v. Boeing Co., 577 F.3d
1044, 1049 (9th Cir. 2009).  In contrast, when a plaintiff relies
on circumstantial evidence to show pretext, "'that evidence must be

**United States District Court**
For the Northern District of California

specific and substantial to defeat the employer's motion for summary judgment.'" Id. (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)).  In performing this analysis, the Ninth Circuit has cautioned that district courts should consider a plaintiff's "claim of discrimination 'with regard to each of these employment decisions separately, examining the specific rationale offered for each decision and determining whether that explanation supported the inference of pretext.'" Odima v. Westin Tucson Hotel Co., 991 F.2d 595, 600 (9th Cir. 1993) (quoting Norris v. City & Cnty. of S.F., 900 F.2d 1326, 1330 (9th Cir. 1990)).

To establish a prima facie case of discrimination, a plaintiff generally must provide evidence that (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.  Guz, 24 Cal. 4th at 355; Nicholson v. Hyannis Air Serv., 580 F.3d 1116, 1123 (9th Cir. 2009).  Sometimes the fourth prong is analyzed in terms of whether a plaintiff can show that "similarly situated individuals outside [her] protected class were treated more favorably." Johnson v. Chevron Corp., 472 Fed. App'x 428, 429 (9th Cir. 2012) (quoting Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003) and citing Brooks v. City of San Mateo, 229 F.3d 917, 23 (9th Cir. 2000)).

///

///

///

**United States District Court**
For the Northern District of California

1   **i.     Defendant Contends that Plaintiff Cannot State a**

2   **Prima Facie Claim for Discrimination**

3        Defendant does not dispute that Plaintiff was a member of a

4   protected class or that there were adverse employment actions, but

5   it does challenge Plaintiff's qualifications and performance in

6   certain respects, and it contests Plaintiff's circumstantial

7   evidence of discrimination.

8   **a.     Plaintiff's SIP Bonus Rejection and Negative**

9   **Reviews**

10       First, as to Plaintiff's claims based on her negative

11  performance reviews and the rejection of her 2011 SIP bonus,

12  Defendant contends that Plaintiff cannot state a prima facie claim

13  of discrimination because she cannot identify any male employees

14  who were treated more favorably.  Reply at 9 (citing Guitron v.

15  Wells Fargo Bank, N.A., No. C 10-3461 CW, 2012 WL 2708517, at *19

16  (N.D. Cal. July 6, 2012) (applying that comparative treatment

17  test)).  Defendant further argues that even if Plaintiff had stated

18  a prima facie case here, it had a legitimate, non-discriminatory

19  reason for issuing negative performance reviews and refusing to

20  give her a bonus: the undisputed objective measures of her job

21  performance showed decline, despite Plaintiff's excuses that there

22  was nothing she could do to help the business, and Plaintiff did

23  not appear to understand the importance of focusing on a solution.

24  MSJ at 15; Reply at 9.

25       Plaintiff contends that she was a capable and competent

26  consumer sales manager for Defendant, and that no jury would

27  believe Defendant's contentions regarding her performance were

28  appropriate or "legitimate business reasons."  Opp'n at 15.  She

United States District Court
For the Northern District of California

states that the only reason for her low performance reviews, given her twenty-five years of good performance, is that "Rising is a misogynist who thinks women should be relegated to secretarial 'women's roles,' just as with Nancy Nelson." Id. Plaintiff contends that the admissible evidence shows that she was "doing just fine, and it was only Rick Rising who wanted [her] gone. The reason [Plaintiff] was fired was not her objective performance, it was Rick Rising's biased perception of her as an older female who was 'overly emotional' and working outside of a female secretary's role." Id. at 15-16.

In determining whether a plaintiff is "qualified" for purposes of establishing a prima facie case under McDonnell Douglas, the Ninth Circuit "has long held" that "[t]he qualifications that are most appropriately considered at step one [of McDonnell Douglas] are those to which an objective criteria can be applied . . . ." Nicholson, 580 F.3d at 1123 (quoting Lynn v. Regents of Univ. of Cal., 656 F.2d 1337, 1345 n.8 (9th Cir. 1981)). Accordingly, the Court cannot hold that Plaintiff's subjective evaluation of her performance is sufficient to raise a triable question of fact. See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

The undisputed evidence does not comport with Plaintiff's narrative about her competent performance here. Plaintiff states that it "defies common sense" that she would have received a salary increase in 2010 if she had been such a deficient worker. She continues that Defendant's business with Safeway was excellent during this time, citing her performance reviews from 2008 to 2010 and her declaration that "[d]uring the ten years I was one of the

**United States District Court**
For the Northern District of California

1  two primary sales contacts with Safeway, our business and our

2  relationship with Safeway was excellent."  ECF No. 24-2 ("Pl.

3  Decl.") ¶ 2-3 & Ex. A ("Reviews").[4]  However, the record shows that

4  there are no genuine issues of material fact as to Plaintiff's

5  performance per her Reviews or rejection from consideration for a

6  SIP bonus.

7      Plaintiff's own evaluation of her performance is insufficient

8  to raise an issue of material fact here.  <u>Bradley</u>, 104 F.3d at 270.

9  In evaluating the Reviews, it is undisputed that while Plaintiff

10 received an overall positive review in 2008, at the low end of

11 "Exceeding Expectations," the review for 2009 indicates that she

12 missed several performance benchmarks and needed to improve

13 forecasting, warranting a "Meeting Expectations" mark.  2009 Review

14 at 1-3.  For example, Plaintiff's review for that year states, "We

15 missed the first 5 months of the year promoting Napkins," Plaintiff

16 "wasn't able to secure distribution [for the Perfect Touch cup

17 product] during October review," and "Standard count plate

18 promotions were not initiated until May."  <u>Id.</u> at 1.

19     In her 2010 Review, Plaintiff continued to miss forecasting

20 benchmarks, showed difficulty with the iPlan system, and was noted

21 to have had "issues with respect to others," thereby lowering

22 morale, despite being a "tireless worker who takes tremendous pride

23 in what she does" and having a strong relationship with Safeway.

24 2010 Review at 1-2.  She was rated at the low end of "Meeting

25 Expectations" despite the review stating that she was a "good fit

26 for this team" and "has positioned herself and her business for an

27

28 [4] These Reviews are the same as the ones provided with Defendant's
motion.  <u>Compare</u> Pl. Decl. Ex. A <u>with</u> Pangborn Decl. Exs. A-B.

outstanding 2011 and beyond." Id. at 2.  In terms of Plaintiff's sales performance, the 2010 Review indicates under "Missed Opportunities" that Defendant forecasted a $2.1 million net revenue decrease from the previous year's sales, in part a result of declining sales for Dixie plates and Vanity Fair napkins at Safeway.  2010 Review at 1 ("2010 forecasted to lose 40k stat / $2.1M Net Rev vs. LY -- driven by 2H 2010 declines (Dixie + Napkin)").

Plaintiff's 2011 Review, as corrected, indicates that Plaintiff continued failing to meet her benchmarks, and that Safeway's Dixie and Vanity Fair shares continued to drop.  2011 Review at 3-4.  The 2011 Review also notes behavioral issues, id. at 4, and ultimately gives Plaintiff an overall performance review at the high end of "Below Expectations," id. at 5.  Despite Plaintiff's categorization of the 2008-2010 Reviews as being "consistently positive," Pl. Decl. ¶¶ 2-3, the objective reading of those Reviews is that, while she was at one time rated at the low end of "Exceeding Expectations," for 2009 and 2010 she never exceeded the overall "Meeting Expectations" review.  In terms of the sales numbers reflected in the 2011 Review, the "Missed Opportunities" section notes that while the Dixie napkin and total Georgia-Pacific napkin share rose 4.1 and 2.1 points, respectively, the Dixie volume dropped by 15.7 percent; revenue dropped 14.4 percent; gross market dropped 14.1 percent; and the overall share dropped by 2.3 points.  2010 Review at 3; Pl. Depo. 157:10-158:10 (affirming the interpretation of those numbers and noting that only Plaintiff's numbers were down).  Vanity Fair napkin sales all declined, with volume dropping 22.4 percent, revenue falling 32.7

**United States District Court**
For the Northern District of California

1   percent, gross market reduced by 51.4 percent, and overall share

2   down by 2.0 points.  Id.

3       Plaintiff confirmed that by July 22, 2011, Dixie sales to

4   Safeway had attained only 51.7 percent of the forecasted numbers --

5   a sub-optimal outcome.  Pangborn Decl. Ex. 43 ("Rising Email to

6   Safeway Team"); Pl. Depo. 149:19-150:22 ("Q: You would agree that

7   [the forecast percentage of 51.7] is not good.  Correct?  A:

8   Correct.").  These facts all show that Plaintiff's objective

9   performance numbers fell below expectations.

10      The Court finds that Plaintiff has failed to state a prima

11  facie claim for discrimination based on the negative reviews.

12  Plaintiff does not address this directly in her brief, focusing

13  mainly on Defendant's purportedly "legitimate, non-discriminatory"

14  reasons for making adverse actions instead of evaluating the bases

15  for the Reviews themselves.  See Opp'n at 9, 17 (discussing the

16  negative reviews in context of Defendant's decisions regarding the

17  SIP bonus and the termination).  Yet to the extent that Plaintiff

18  charges that Mr. Rising's negative review was discriminatory, and

19  that Mr. Rising was a "misogynist who thinks women should be

20  relegated to secretarial 'women's roles,'" who also viewed

21  Plaintiff as "an older female who was 'overly emotional' and

22  working outside of a female secretary's role," no facts on the

23  record support Plaintiff's contention, as explained below.

24      These specific accusations only appear in Plaintiff's

25  opposition brief, which purports to provide evidence of Mr.

26  Rising's opinions about women.  Plaintiff's brief states, "Rising

27  also thought Plaintiff was 'overly emotional,' one of the ways in

28  which he revealed his gender/age bias."  Opp'n at 7 (citing Pl.

**United States District Court**
For the Northern District of California

1  Depo. 63:2-10.  But the evidence Plaintiff cites, part of her

2  deposition, says nothing like that -- and it certainly does not

3  include the phrase "overly emotional," despite the brief's

4  summation of Mr. Rising's thoughts.  Rather, that portion of the

5  deposition, consisting of questioning from Defendant's counsel

6  relating to feedback about Plaintiff from her co-worker Ms.

7  Ornellas, reads in full:

8      Q.   So it sounds like to the extent that your coworkers
       or your managers believed that you reacted emotionally
9      or you reacted inappropriately to frustrations, that you
       would believe they were off base.  Is that correct?
10

       [Objections omitted.]
11

       THE WITNESS:   They said I acted in appropriately?
12

13  This does not comport with Plaintiff's characterization of the

14  facts in her brief.  Plaintiff treats a question from Defendant's

15  counsel as if it were a statement or opinion from Mr. Rising, but

16  there is nothing anywhere in the record to support such a statement

17  of fact based on the evidence Plaintiff cited.

18      Moreover, the feedback that served as the source of

19  Defendant's counsel's question came from Ms. Ornellas's internal

20  review of Plaintiff -- "360 feedback" in workplace parlance --

21  which stated that Plaintiff, despite having strong work-oriented

22  goals, had "opportunities for improvement" with regard to her

23  "professional maturity and the immediate reactions to people and

24  situations."  ECF No. 25-8 ("McDonald Decl.") Ex. A ("Ornellas

25  Review").  Pete Thomsen, Plaintiff's supervisor before Mr. McDonald

26  and after Mr. Rising, similarly stated that Plaintiff "should

27  consider how she reacts to frustrations with our organization" and

28  could improve by working to implement changes to what she found

1    frustrating.  McDonald Decl. Ex. B ("Thomsen Review").  Plaintiff

2    stated as to these criticisms, "There is some grain of truth.  I

3    will say that."  Pl. Depo. 63:12-18.  The Court finds ample grounds

4    in the record for Defendant's giving Plaintiff the negative

5    Reviews, and no support for Plaintiff's contention that the Reviews

6    were backed by some discriminatory animus.

7         Nor does the record show that Mr. Rising thought Plaintiff was

8    a "hysterical female," that Mr. Rising "holds misogynist gender

9    stereotypes about women being illogically over-emotional," or that

10   Mr. Rising had "temper issues and problems with yelling and

11   storming out of meetings with the older females on the Safeway

12   team."  Opp'n at 7 (citing Fromson Decl. ¶ 10 & Ex. E).  Again, the

13   phrase "hysterical female" appears in quotation marks, as if Mr.

14   Rising or another of Defendant's employees had said it, but it

15   appears nowhere in the evidence Plaintiff cites.  Fromson Decl. ¶

16   10 & Ex. E.  Plaintiff's declaration states, for the first time in

17   this case, that Mr. Rising had temper issues and would micromanage

18   and belittle her after she submitted her complaint to Ms.

19   Stallings.  Fromson Decl. ¶ 10.  Absent any allegations to this

20   effect or any proof in the record, these are "mere assertions,"

21   "without substantial factual evidence," that are insufficient to

22   preclude summary judgment.  Steckl v. Motorola, Inc., 703 F.2d 392,

23   393 (9th Cir. 1983); see also Kennedy v. Allied Mut. Ins. Co., 952

24   F.2d 262, 266 (9th Cir. 1991) (affidavits and declarations merely

25   contradicting prior testimony do not create issues of fact).

26        Further, Exhibit E to Plaintiff's declaration, a chain of

27   emails she sent to Ms. Stallings between July 19 and July 27, 2011,

28   indicate that Plaintiff was seriously concerned about her workplace

United States District Court
For the Northern District of California

1  situation, but never includes quotations from Mr. Rising or

2  descriptions of his allegedly unhinged behavior -- at most,

3  Plaintiff writes, "It has become more and more uncomfortable/toxic

4  in the office.  I do not want to go into detail in this email . . .

5  ."  This is not proof of Mr. Rising's temperament or discriminatory

6  motive, nor is it a record of what he said at any point.  The

7  record contains no evidence whatsoever supporting the contention

8  that the uncomfortable or toxic atmosphere was due to Mr. Rising's

9  actions, except Plaintiff's own declaration and brief, which are

10  "mere assertions" insufficient to preclude summary judgment.

11  Steckl, 703 F.2d at 393.

12       Finally, there is no proof or issue of fact regarding

13  Plaintiff's claims that Rising relegated women to secretarial and

14  administrative roles and "displayed common gender biases,"

15  enforcing typical gender stereotypes regarding "women's work."

16  Opp'n at 6-7, 16-17, 21.

17       Plaintiff refers to the deposition of Nancy Nelson, a business

18  analyst, to support this point.  Plaintiff contends that Mr. Rising

19  assigned Ms. Nelson to administrative or secretarial tasks (e.g.,

20  booking travel and meal arrangements), excluded her from sales

21  meetings to prevent her from moving up in the company, only gave

22  women like Ms. Nelson administrative tasks, and refused her

23  repeated requests for pay.  Id. at 6-7 (citing ECF No. 24-1

24  ("Jennings Decl.") Ex. L ("Nelson Depo.")).[5]

25  [5] Rather than the Jennings Declaration, Plaintiff's brief cites the
    "McCoy Declaration" throughout.  There is no McCoy Declaration in
26  the record for this case.  Since the exhibits cited match to the
    Jennings Declaration, the Court assumes that Plaintiff is referring
27  to that document, but the Court also notes that counsel has an
    obligation to lay out support clearly so that evidence can
28  conveniently be found.  Carmen v. S.F. Sch. Dist., 237 F.3d 1026,

United States District Court
For the Northern District of California

Ms. Nelson does state that the team lacked administrators or secretaries, but contrary to Plaintiff's brief, she does not say that she was the only employee to have been assigned administrative or secretarial work: another employee, "James," was also tasked with such work. Nelson Depo. 35:22-36:9. Moreover, during this time, Mr. Rising had not taken over the Safeway team: Mr. McDonald was still the manager. Id. 37:9-22. After Mr. Rising took over, Ms. Nelson still was tasked with secretarial or administrative work, but so was another of Defendant's employees, Mark Weingartner, though because he was on a different team, Ms. Nelson was the only member of the Safeway work group assigned administrative tasks. Id. 37:11-38:9. It is true that under Mr. McDonald, Ms. Nelson was denied a pay increase for the additional work, but under Mr. Rising, she was not denied an increase, and Mr. Rising did not say anything about "women's work." Id. 38:23-40:3. And though Mr. McDonald -- not Mr. Rising -- asked Ms. Nelson not to attend part of a sales meeting, she testified that it was for the purpose of correcting "a problem with the deductions and post audits," which concerned Ms. Nelson's primary job duties. Id. 32:8-18, 54:3-16.

The Court therefore finds that Plaintiff's statements about Mr. Rising's behavior toward Ms. Nelson raise no triable issues of fact as to his biases as they might relate to Plaintiff's Reviews (or, as noted below, anything else). Indeed, despite Plaintiff's characterization of Ms. Nelson's experience -- however difficult or mismanaged it might have been -- Ms. Nelson testified that she never felt discriminated against due to her sex or her age. Id.

1031 (9th Cir. 2001).

54:25-10.

Plaintiff's brief is replete with quotations that might appear to come from Mr. Rising but do not.  The facts often blur accusations between Messrs. McDonald and Rising.  Most significantly, the evidence never actually includes much of the purportedly quoted material from Plaintiff's briefs -- in fact, none of the most incendiary quoted phrases, like "women's work" or "hysterical females" ever appears outside Plaintiff's opposition brief itself.  The Court does not and cannot find that the undisputed facts suggest that the negative review was issued because Mr. Rising was biased.[6]

Plaintiff has accordingly failed to state a prima facie claim for discrimination based on the negative reviews: the circumstantial evidence does not show that they were issued with a discriminatory motive, and in any event, the evidence shows that Plaintiff's performance was not competent with regard to certain relevant metrics, as reflected in the Reviews.

Further, there is no material issue of fact as to Plaintiff's performance relative to her not receiving the SIP bonus.  Plaintiff herself states that the SIP bonus was "a hundred percent discretionary."  Pl. Depo. 48:1-53:1.  The Reviews indicate that to at least some degree, her performance was not satisfactory, and she had failed to meet her benchmarks, showing that she was not

---

[6] The Court notes to Plaintiff that while aggressive advocacy and strong writing are encouraged in our adversarial system, all representations to the Court are subject to Rule 11, and factual contentions not supported by evidence are sanctionable.  Further, Plaintiff's accusation that Defendant's staffed its case with female attorneys in order to "mask from the Court the fact that Mr. Rising is a misogynist 'good old boy'" is misleading, unsupported by facts or law, and ultimately unprofessional.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

performing her job satisfactorily.  See generally Reviews; compare
Reviews with RR&E's at 2-3 (providing "key performance indicators,"
which the Reviews show Plaintiff failed to meet); see supra.
Further, Plaintiff fails to show that the protected class -- in
this case, Defendant's female employees -- were unfavorably treated
compared to a corresponding subclass, as undisputed evidence shows
that the only member of Plaintiff's team to receive a SIP bonus in
2011 was Nancy Nelson, a 57-year-old female business analyst.
Stallings Decl. ¶ 8.  The Court therefore finds that Plaintiff has
failed to state a prima facie claim for discrimination based on her
not receiving a SIP bonus: she did not perform her job
satisfactorily, and was not treated differently than employees not
belonging to the protected class.  See Johnson, 472 Fed. App'x at
429; Guitron, 2012 WL 2708517, at *18-19.

Defendant is accordingly entitled to summary judgment as to
Plaintiff's claims based on the Reviews and her failure to receive
a SIP bonus.

### b.   **Plaintiff's Termination and Defendant's Justification for It**

Defendant argues that Plaintiff would not have been qualified
for the new, post-termination position, and that even if she had
been, Defendant had legitimate, nondiscriminatory business reasons
for terminating Plaintiff's employment.  Plaintiff contends that
the circumstantial evidence proves otherwise.  Defendant's argument
against pretext is applicable to the other arguments rejected above
for Plaintiff's failure to state a prima facie discrimination
claim.

Assuming arguendo that Plaintiff could show that she would

**United States District Court**
For the Northern District of California

have been qualified for the combined, post-termination position, Defendant bears the burden of production to articulate its reason for the challenged action.  If it can, the burden shifts to Plaintiff to show that the reason is pretextual, and for this Plaintiff must make a "specific and substantial" showing to defeat the motion for summary judgment.  <u>EEOC v. Boeing</u>, 577 F.3d at 1049; <u>Coghlan</u>, 413 F.3d at 1095.[7]  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981)).  In other words, once a defendant meets its burden of production, the presumption of discrimination drops, though the trier of fact may still consider evidence supporting the plaintiff's prima facie case and inferences properly drawn from it regarding the issue of whether the defendant's explanation is pretextual.  <u>See</u> <u>id.</u> (citing <u>Burdine</u>, 450 U.S. at 253, 55; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506, 511 (1993)).

   Defendant articulates the following reasons for terminating Plaintiff's position and not offering the new one to her.  It states that Plaintiff's performance in her previous position, which

---

[7] Plaintiff is wrong that Defendant bears a high burden of persuasion on this point and must "establish beyond peradventure all of the essential elements [of an affirmative defense] in his favor."  Opp'n at 19 (citing <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986)).  First, the burden-shifting here concerns burdens of production, not persuasion.  Second, Plaintiff's case concerned affirmative defenses, and the <u>McDonnell Douglas</u> test does not.  Finally, the Court is not bound by out-of-circuit authority.

1  would have entailed half the responsibility of the new, combined

2  position, was not satisfactory in terms of the objective data or

3  her Reviews.  On this point, Defendant points to the undisputed

4  fact that Defendant's sales to Safeway were lower than all other

5  sales, stating that in such a case, no employer would give a new

6  job, with high responsibilities, to an employee who had failed to

7  meet expectations in her previous position.  Further, Defendant

8  cites Plaintiff's difficulty prioritizing her tasks, as well as her

9  testimony that she believed external factors -- e.g., Defendant's

10  being "over-shared" at Safeway, the introduction of Safeway's house

11  brand, the effects of recession, and problems presented by her

12  team's being understaffed -- necessarily limited her from doing

13  anything to improve her sales benchmarks.  Defendant therefore

14  concludes that its business reasons for terminating Plaintiff's

15  position and not offering her the new job are sufficient.

16      Plaintiff contends that Defendant has not met its burden to

17  provide legitimate business reasons for Plaintiff's termination.

18  She argues first that Defendant's argument is based on "shifting,

19  contradictory, and unbelievable" assertions, the inconsistencies of

20  which undermine Defendant's position.  Opp'n at 19-20.  Second, she

21  argues that even if the Court ignores Defendant's "contradictions,

22  mistruths, and outright lies," she can prove pretext either

23  indirectly, by showing that Defendant's proffered explanation is

24  "internally inconsistent or otherwise unbelievable," or directly,

25  by showing that "unlawful discrimination more than likely motivated

26  the employer."  Id. at 20 (citing Morgan v. Regents of Univ. of

27  Cal., 88 Cal. App. 4th 52, 68 (Cal. Ct. App. 2000)).

28  ///

### 1.   <u>Defendant's Explanation is Worthy of</u>
<u>Credence</u>

If an employer offers an explanation of its reasons for terminating an employee that is "contradictory, implausible, uninformed, or factually baseless," an inference of dissembling may arise, and the employer's explanation of its actions can be unworthy of credence.  <u>Guz</u>, 24 Cal. 4th at 363.

Plaintiff argues that Defendant's assertions reveal three "shifting, contradictory, and unbelievable" reasons for terminating Plaintiff's employment.  Opp'n at 19.  First, Plaintiff contends that Defendant's statement that it "separated" Plaintiff's employment "as a result of the elimination of [her] position as Customer Sales Manager" is provably false, since Defendant "immediately hired a younger, less experienced, male employee as a 'Customer Sales Manager' for the Safeway team."  <u>Id.</u>  Second, Plaintiff argues that Defendant's position that it terminated Plaintiff for poor performance is a "tall tale," because Defendant's own evidence shows above-projections sales for the Safeway team, and its assertions of bad performance are premised "solely upon one bad performance review by the man accused of discriminating and retaliating against her, even though she had twenty-five years of good performance, including ten years in that very same position."  <u>Id.</u>  Third, Plaintiff states that Defendant changed its story to state that Plaintiff was "separated (not fired)" because Mr. Rising wanted to "'restructure' the Safeway team to a structure he had used in other markets."  <u>Id.</u> at 20.

Plaintiff fails to show that Defendant's position has changed or become self-contradictory.  Plaintiff's first argument is

**United States District Court**
For the Northern District of California

1  apparently that Defendant's statement that it eliminated

2  Plaintiff's position is inconsistent because it then hired a

3  younger man for the same position -- in other words, her position

4  was never actually eliminated.  Defendant did hire a younger man,

5  Chris Johnson, for the new position, but the position is not the

6  same.  Stallings Decl. II ¶ 6.  Defendant changed the job title

7  from "Senior Customer Sales Manager" to "Senior National Accounts

8  Manager" in December 2013, which Plaintiff suggests meant that

9  Defendant was only changing the title to disguise the fact that the

10 job was the same, but the record shows that from the time of Ms.

11 Ornellas's resignation to the commencement of this litigation,

12 Defendant's position regarding the new job has always been that it

13 combined the duties formerly undertaken by Plaintiff and Ms.

14 Ornellas together, because Defendant no longer thought the Safeway

15 division warranted the cost of having two positions -- a decision

16 that Plaintiff states made sense.  See Pl. Depo. 179:10-180:13.

17 The job was not "the exact same role with the exact same duties,"

18 Opp'n at 10, given that Plaintiff herself states that the job

19 combined two positions into one.  The Court finds that Defendant

20 has not contradicted itself or changed its position on this point.

21     Second, Plaintiff contends that Defendant's statements about

22 her bad performance are contradictory, because Defendant projected

23 high sales for Plaintiff's Safeway team, and Defendant's purported

24 business reason is premised on one bad performance review by a

25 biased manager.  Opp'n at 19.  The Court finds that Defendant has

26 not contradicted itself on these points, either.  As to Defendant's

27 sales projections, the objective numbers indicate that Plaintiff

28 failed to meet her benchmarks, and the evidence Plaintiff cites --

**United States District Court**
For the Northern District of California

Defendant's deposition of Plaintiff's co-worker Abdullah Hahris --
does not contradict Defendant's position regarding Plaintiff's
performance.  In that deposition, Mr. Hahris states that between
August 2011 and December 2011, the TTN division, which included
Plaintiff's napkin products as well as Ms. Ornellas's tabletop
products, exceeded sales projections by over 100 percent each
month.  Jennings Decl. Ex. K ("Hahris Depo.").[8]  As Plaintiff
notes, the sales figures are not apportioned between Ms. Ornellas
(the "TT" part of the TTN team) and Plaintiff (the "N"), but this
does not render Defendant's position contradictory: given
Plaintiff's declining performance reviews and metrics during 2011,
Defendant's negative evaluation of her overall performance has
remained consistent, and mathematically, if Ms. Ornellas had
continued to perform well, the overall sales figures would have
been higher regardless.  The Court finds that Defendant's position
remained consistent on this point as well.

Finally, Defendant also has not changed its position regarding
its reasons for firing Plaintiff with regard to its decision to
restructure the Safeway team.  Since Plaintiff does not cite to the
record in this portion of her brief, Opp'n at 20, it is not
entirely clear what she means by this allegation, but given her
testimony and the declaration and deposition of Mr. Rising, there
does not appear to be any actual dispute as to the reason why
Defendant cut one CSM position.  See Pl. Depo. 179:10-180:13;
Rising Decl. ¶ 17; Pangborn Decl. II Ex. C ("Rising Depo.") 73:2-

---

[8] It is not entirely clear from the record what Mr. Hahris's
position is, but it is undisputed that he was one of Plaintiff's
co-workers during the relevant periods, and that he is currently an
employee of Defendant.

**United States District Court**
For the Northern District of California

24.  Defendant may not have enunciated that the reason for its restructuring had to do with a desire to replicate team structures from other markets, but this fact does not change Defendant's story or render its earlier explanations inconsistent.

Accordingly, the Court finds no internal contradictions or baseless statements in Defendant's explanation of its actions. <u>Guz</u>, 24 Cal. 4th at 363; <u>see also</u> <u>Day v. Sears Holdings Corp.</u>, 930 F. Supp. 2d 1146, 1173 (C.D. Cal. 2013) (to support a finding of pretext, there must be substantial changes over time in the employer's proffered reason for its employment decision).  The Court finds that Defendant has carried its burden on this point, and Plaintiff has failed to persuade the Court otherwise.

## 2.   <u>Plaintiff Fails to Show that Defendant Was Motivated by Unlawful Discrimination</u>

Plaintiff also argues that she can prove pretext by showing that unlawful discrimination more than likely motivated Defendant's actions, because Defendant treated similarly situated employees outside Plaintiff's protected class more favorably.  Opp'n at 20 (citing <u>Vasquez v. Cnty. of L.A.</u>, 349 F.3d 634, 651 (9th Cir. 2004)).  Such circumstantial evidence must be specific and substantial, <u>EEOC v. Boeing</u>, 577 F.3d at 1049, and Plaintiff cannot "simply show that the decision was wrong, mistaken, or unwise," <u>Horn v. Cushman & Wakefield W., Inc.</u>, 72 Cal. App. 4th 798, 806-07 (Cal. Ct. App. 1999).  As noted above, the Court does not find that Defendant's reasons for Plaintiff's termination were shifting, contradictory, unbelievable, or otherwise insufficient to support its legitimate business reasons argument.

Plaintiff offers several more arguments in support of her

contention that her termination was pretextual: that her
performance was satisfactory; that in her workplace "females were
relegated to subordinate, administrative roles or they were forced
out of their jobs by boorish, unacceptable, and harassing behavior
by Rising"; and that Mr. Rising "targeted women," "had prejudicial
views of women's roles," and considered women to be "overly
emotional" and "irrational creatures."  Opp'n at 21.  Plaintiff
also cites Mr. Rising's taking a cab from the airport while
Plaintiff took a bus, and Plaintiff's alleged exclusion from group
dinners.  Id.

       None of Plaintiff's contentions are supported by the evidence.
As noted above, Plaintiff's performance was objectively below
expectations, and her co-workers undisputedly believed that
Plaintiff's methods of dealing with and communicating her personal
frustrations about the workplace negatively impacted the office's
morale.  Further, as also explained above, many of Plaintiff's
statements about Mr. Rising are not supported in the record: the
evidence does not support Plaintiff's allegations that she was
"bombarded" or "micromanaged," or that women from Plaintiff's
office "endured shouting, yelling, and abusive language" calculated
to force them from their jobs.  Nor do Plaintiff's assertions about
Mr. Rising's social behavior satisfy Plaintiff's burden to show
pretext.  The facts that Mr. Rising did not invite her to ride in a
cab with him, that Mr. Rising took a different seat at a meeting,
or that Mr. Rising sometimes avoided Plaintiff do not support the
accusation that Mr. Rising was motivated by discriminatory animus.
Such actions might be unfair or offensive, but they do not offer
specific, substantial support for Plaintiff's burden to show even a

United States District Court
For the Northern District of California

suggestion of discriminatory motivation.  EEOC v. Boeing, 577 F.3d at 1049.

Plaintiff's other new contention, raised in her brief, also fails to carry her burden on this point.  Plaintiff states that Mr. Rising approached Mr. Hahris after Ms. Ornellas's resignation and Plaintiff's termination to say, "Well, are you glad that the two of them are gone now?"  Opp'n at 21; Pl. Depo. 214:17-215:5.  The only evidence of this on the record is Plaintiff's statement that Mr. Hahris relayed that statement to her after the news of her termination.  Pl. Depo. 214:17-215:5.  That is inadmissible hearsay, as is Plaintiff's assertion that Mr. Thomsen once told her that Mr. Rising was a "guy's guy" in response to her question about why he might be avoiding her -- a response that, even if it were admissible, would not raise a material question of fact in this case.  Plaintiff's brief also cites to paragraph "?" of Ms. Ornellas's declaration, an appropriate citation because she filed no declaration in this case and the Court can find no other support in the record that would fill this citation gap.[9]  Opp'n at 8:21.  The other witnesses, Mr. Hahris and Mr. Rising, both say that they could not recall hearing or making such a statement.  Rising Depo. 117:1-8; Hahris Depo. 21:24-22:13.  Plaintiff has failed to carry her burden on this point.

Even if Plaintiff had established a prima facie case for

---

[9] It is not the Court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel must lay out their support clearly, and the Court need not search the case file for evidence if counsel has not set forth such evidence in its opposition "with adequate references so that [the evidence] could conveniently be found."  Carmen, 237 F.3d at 1031.  Further, counsel is reminded that an unsupported factual assertion is subject to Rule 11.

**United States District Court**
For the Northern District of California

1  discrimination, she has failed to offer any specific, substantive,

2  or probative evidence that Defendant's alleged purpose was a

3  pretext for discrimination against her.  Defendant is entitled to

4  summary judgment on both of Plaintiff's discrimination claims.

5      **B.    Hostile Work Environment**

6      To establish a claim of hostile work environment under FEHA, a

7  plaintiff must show that (1) she is a member of a protected class;

8  (2) she was subjected to unwelcome harassment; (3) the harassment

9  was based on her protected classification; (4) the harassment

10 unreasonably interfered with her work performance by creating an

11 intimidating, hostile, or offensive work environment; and (5)

12 Defendant is liable for the harassment.  Thompson v. City of

13 Monrovia, 186 Cal. App. 4th 860, 876 (Cal. Ct. App. 2010).  The

14 Court must also consider the frequency and severity of the

15 allegedly discriminatory conduct -- the behavior must have been

16 severe and pervasive.  Surrell v. Cal. Water Svc. Co., 518 F.3d

17 1097, 1109 (9th Cir. 2008).  If the claim is based on isolated

18 incidents, a plaintiff must show that the conduct was "severe in

19 the extreme."  Herberg v. Cal. Inst. of the Arts, 101 Cal. App. 4th

20 142, 151 (Cal. Ct. App. 2002).

21     Plaintiff argues that the facts show that Mr. Rising harassed

22 her.  Opp'n at 22.  She claims that he made "the extra, personal

23 effort to make sure that, in the relatively short intervening time

24 between her complaint and being 'downsized,' she was harassed,

25 harangued, micromanaged, and pressured to leave."  Id.  This

26 behavior allegedly included her being "yelled at, accused of

27 incompetence and being 'overly emotional' and thus unfit for her

28 job due to her gender," as well as her being "repeatedly snubbed

**United States District Court**
For the Northern District of California

and belittled by Rising." Id.  She also contends that Ms. Ornellas was subject to the same behavior, and that Ms. Ornellas resigned to escape it.  Id.  Finally, Plaintiff states that none of this treatment was related to either woman's job duties; none was necessary or ordinarily within the confines of a working environment; and Mr. Rising did not treat any male employees the same way.  Id.[10]

Plaintiff cites no facts to support any of these contentions in her brief.  Id.  As above, the Court has found no factual support for Plaintiff's contentions about Mr. Rising's alleged opinions about women, especially those purportedly quoted from Mr. Rising, like the assertion that Plaintiff was "overly emotional." Again, the alleged harassment and micromanagement seems to refer to Mr. Rising's more frequent emails and discussions with Plaintiff, which according to the record itself do not show any harassment, haranguing, or micromanagement.  All such correspondence is measured and respectful, and the Court does not find that the record supports Plaintiff's position that Mr. Rising was behaving with discriminatory motivations.

Nor can the Court find any evidence in the record that Ms. Ornellas resigned to escape Mr. Rising's behavior, or that Mr. Rising treated male subordinates differently (much less that he mistreated female subordinates).  Plaintiff has failed to carry her burden.  No one in the case, Ms. Ornellas included, has made such

---

[10] Plaintiff also states that Defendant waived any arguments about Mr. Rising's "harassing behavior," such as his alleged shouting, yelling, abusive language, harassment, and other such actions.  See Opp'n at 20-21.  None of these contentions appeared in the record before Plaintiff filed her brief, so Defendant could not have responded to it, much less waived an argument about it. Plaintiff's position is unfounded and misleading.

**United States District Court**
For the Northern District of California

1  statements, and Plaintiff's mere assertions do not suffice to raise

2  issues of material fact in this case.  Steckl, 703 F.2d at 393.

3      The Court finds that Defendant is entitled to summary judgment

4  on Plaintiff's hostile work environment claim.

5      **C.  Retaliation**

6      To establish a prima facie claim for retaliation under FEHA, a

7  plaintiff must show (1) that she engaged in a "protected activity,"

8  (2) that the employer subjected the employee to an adverse

9  employment action, and (3) that there was a causal link between the

10 protected activity and the employer's action.  Yanowitz v. L'Oreal

11 USA, Inc., 36 Cal. 4th 1028, 1042 (Cal. 2005).

12     Defendant argues that Plaintiff cannot show a causal link

13 between the protected activity of making a complaint to HR and any

14 adverse employment action, whether that was being passed over for a

15 SIP bonus, being subjected to closer scrutiny from Mr. Rising, or

16 receiving a negative review.  MSJ at 19-21.  Defendant contends

17 that Plaintiff's complaint from July 2011, and Mr. McDonald's

18 statements in the June 2011 meeting, all occurred before she

19 reported the alleged age or sex discrimination to HR.  Id. at 20.

20 Defendant also notes that Plaintiff's work performance was

21 unsatisfactory, warranting her not receiving a SIP bonus, being

22 subjected to closer management scrutiny, and receiving negative

23 employment evaluations.  Id.  Further, Defendant contends that the

24 ten-month time lapse between Plaintiff's HR complaint and the

25 termination of her employment undermines her causal nexus claims,

26 as does the fact that Mr. McDonald (the only manager about whom

27 Plaintiff made a complaint) was no longer involved in Plaintiff's

28 management when Defendant made the decision to eliminate her

**United States District Court**
For the Northern District of California

1  position.  Id.  Defendant concludes by noting that the triggering

2  event for the elimination of Plaintiff's position was the

3  resignation of Ms. Ornellas, so it could not have been the case

4  that Defendant was pretextually waiting for the right time to take

5  action against Plaintiff.  Id. at 21.

6       Plaintiff asserts that the same facts supporting her

7  discrimination claims support her retaliation claim.  Opp'n at 18-

8  21.  The Court rejects those factual contentions for the same

9  reasons given above: they do not raise any triable issues of fact.

10      Further, Plaintiff's explanation of the time gap between her

11 protected activity and her termination is purely speculative: she

12 contends that a corporate employee like Mr. Rising, guided by Ms.

13 Stallings in HR, would not have been allowed to terminate Plaintiff

14 immediately.  Opp'n at 14.  Plaintiff contends that part of the

15 reason for this is that courts have too rigorously applied "time-

16 limiting" tests for retaliation claims, thereby broadcasting to

17 employers that they should not fire employees "within a few months

18 of a complaint," and resulting in employers "gaming the system by

19 waiting a few months and then enacting their retaliatory intent."

20 Id.  Plaintiff cites no law or facts to support this conclusion.

21 And while Plaintiff is correct that Ms. Stallings was continuing to

22 follow up on Plaintiff's July 2011 complaint as of October 2011,

23 and was implementing a response by late 2011 or early 2012,

24 Plaintiff has still failed to establish that Defendant's waiting to

25 terminate her was pretextual, given undisputed fact that the

26 decision had not been made until Ms. Ornellas resigned in April

27 2012.

28      Plaintiff's arguments here fail.  First, temporal proximity

1   must be very close to infer causation, and spans of even three or

2   four months -- without more factual support -- are too long to

3   support such an inference.  <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532

4   U.S. 268, 273 (2001).  Second, the record establishes that there is

5   no triable issue as to why or when Defendant eliminated Plaintiff's

6   position, and Plaintiff's unsupported speculation does not carry

7   her burden here.  The Court concludes that Defendant is entitled to

8   summary judgment on Plaintiff's retaliation claim.

9   **D.   <u>Wrongful Termination in Violation of Public Policy</u>**

10       Plaintiff asserts that the elements of her wrongful

11   termination claim track those of her arguments for discrimination

12   and retaliation.  Opp'n at 22.  Plaintiff concludes that because

13   she has established triable issues of fact supporting those claims,

14   she has also established that there are material facts to support

15   her contention that she was terminated in violation of public

16   policy.  <u>Id.</u>

17       Because the Court has found that, on the contrary, there are

18   no triable issues of fact regarding Plaintiff's discrimination or

19   retaliation claims, the Court likewise finds that there are no

20   triable issues of fact regarding Plaintiff's wrongful termination

21   claim.  Defendant is entitled to summary judgment on this claim,

22   too.

23   **E.   <u>Punitive Damages</u>**

24       Section 3294(a) of the California Civil Code provides that

25   plaintiffs are entitled to punitive damages "where it is proven by

26   clear and convincing evidence that the defendant has been guilty of

27   oppression, fraud, or malice."  Malice is defined as "conduct which

28   is intended by the defendant to cause injury to the plaintiff or

**United States District Court**
For the Northern District of California

1   despicable conduct which is carried on by the defendant with a

2   willful and conscious disregard of the rights or safety of others."

3   Id. § 3294(c)(1).  "'Oppression' means despicable conduct that

4   subjects a person to cruel and unjust hardship in conscious

5   disregard of that person's rights."  Id. § 3294(c)(2).  If a

6   plaintiff seeks punitive damages against a corporate employer, the

7   plaintiff must show that an officer, director, or managing agent is

8   personally guilty of oppression, fraud, or malice; or that an

9   officer, director, or managing agent authorized or ratified

10  fraudulent, malicious, or oppressive conduct or acted with

11  conscious disregard for the plaintiff's rights.  Cal. Civ. Code §

12  3294(b).  Summary judgment on the issue of punitive damage is only

13  proper "when no reasonable jury could find the plaintiff's evidence

14  to be clear and convincing proof of malice, fraud, or oppression."

15  Hoch v. Allied-Signal, Inc., 24 Cal. App. 4th 48, 60-61 (Cal. App.

16  Ct. 1994).

17      As described at length above, Plaintiff has failed to provide

18  evidence supporting her claims, and nowhere in her brief does she

19  cite to any facts supporting a finding of oppression, fraud, or

20  malice -- much less any evidence leaving "no substantial doubt that

21  [Defendant] engaged in despicable conduct, or conduct intended to

22  cause injury."  Scott v. Phoenix Sch., Inc., 175 Cal. App. 4th 702,

23  715 (Cal. Ct. App. 2009).  Punitive damages must be supported by

24  evidence of truly vile conduct, not just ill-advised or misguided

25  conduct.  Id.  Accordingly, Defendant is entitled to summary

26  judgment on this claim.

27  ///

28  ///

1   **V.**   <u>**CONCLUSION**</u>

2       As explained above, Plaintiff Catherine Fromson has failed to

3   rebut Defendant Georgia-Pacific Consumer Products LP's motion for

4   summary judgment.  The motion is GRANTED.

5

6   **VI.**   <u>**JUDGMENT**</u>

7       Defendant Georgia-Pacific Consumer Products LP's motion for

8   summary judgment has been granted.  Judgment against Plaintiff

9   Catherine Fromson and in favor of Defendant is accordingly ENTERED.

10

11

12       IT IS SO ORDERED.

13

14       Dated: February 24, 2014

15                      UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
*For the Northern District of California*